## MATTHEWS COMPANY *v.* REYNOLDS-SELZ-FULKERSON, INC.

74-363                                        522 S.W. 2d 425

### Opinion delivered April 21, 1975
[Rehearing denied May 27, 1975.]

*Stubblefield & Matthews,* for appellant.

*House, Holmes & Jewell,* for appellee.

LYLE BROWN, Justice. This appeal is from a judgment in the lower court based on the jury verdict for $6,000 in favor of appellee against appellant for a real estate commission claimed on a lease by the Bonanza Steak House as lessee from appellant as lessor of a restaurant site in Jacksonville. For reversal appellant contends the verdict is not sustained by the evidence, the court erred in refusing two instructions, and it was error to permit testimony about the fair value of appellant's services.

We shall abstract the facts in the light most favorable to the verdict of the jury and the judgment of the trial court. Robert Vogel, a licensed real estate salesman for appellee, met in Jacksonville with Jim Manning, president of the corporation that operates Bonanza Steak Houses, for the pur-

pose of showing Manning property which he thought might be suitable for the location of a steak house. Mr. Manning decided that the site was not desirable. Robert Vogel then indicated that he knew of another location in the Wal-Mart Shopping Center about two blocks away. The two men proceeded to that site and spent a short time looking at the property and discussing its desirability as a potentially good location. Robert Vogel offered to find out who the owner was and get back in contact with Mr. Manning. In accordance with Mr. Manning's request that he do so, Robert Vogel called Wal-Mart Store and found that the site was owned by appellant, Matthews Company. Mr. Vogel called Jim Matthews of the Matthews Company and asked him if the property was available for lease, and if he would receive a commission in the event that he provided the lessee for the location. Mr. Matthews stated that his company would pay a commission. Later that day, Robert Vogel and Mr. Matthews met at the site to discuss the proposed transaction. Mr. Vogel asked Mr. Matthews again if the Matthews Company would pay a commission. Mr. Matthews again indicated that they would. Mr. Matthews then inquired as to the name of the prospective lessee, and when he determined that it was Bonanza Steak House, he told Mr. Vogel that the Matthews Company had dealt with Bonanza Steak House in the past and that he would not pay appellee a commission for the transaction. Mr. Vogel then called Mr. Manning and told him that the owner of the property was the Matthews Company. Mr. Manning then indicated that he had dealt with the Matthews Company on several other leases and would be able to deal with it directly in perfecting the lease.

Subsequently a lease agreement was consummated between the Matthews Company and Bonanza Steak House for the Jacksonville location. A steak house was built at the site and went into operation. Appellant Matthews Company continued to refuse to pay a commission on the lease and appellee then asked the lessee of the property if he would be willing to pay a part of the commission. Lessee agreed to pay one-half of the proposed commission, one-half being figured at $6,000. That amount of money is being paid over a twenty-year period at $25.00 per month.

The amount asked for as against Matthews Company, being $6,000, was based on a quantum meruit basis since there is no contention that a definite fee was arrived at between the parties. There was testimony by competent real estate men that $12,000 would be a fair, full commission. The jury rendered a verdict in favor of appellee for the full amount of the commission claimed against appellant.

The first point for reversal is that the verdict is not sustained by the evidence. Without repeating the evidence just stated, and without recounting evidence favoring the point, we deem it sufficient to say that under the testimony offered by Vogel there was a meeting of the minds to the effect that Mr. Vogel would represent the Matthews Company in procuring a prospective lessee. It was only after Mr. Vogel revealed the name of his prospect that Mr. Matthews attempted to withdraw from the agreement. The jury was fully and fairly instructed on the prerequisites for recovery of the fee. It was told that the appellee had the burden of proving: (1) that Matthews Company agreed to let Mr. Vogel show the property for the purpose of leasing same; (2) that Matthews Company agreed to pay plaintiff for its services; (3) that plaintiff's services were the procuring or efficient cause of the transaction; (4) that the lessee was ready, willing and able to perform, and that plaintiff performed all his duties honestly and in good faith.

The second point for reversal is that the court erred in refusing appellant's requested instruction No. 3, which reads as follows:

As a defense to the commission claimed by plaintiff, defendant (appellant) contends that Robert Vogel was acting for Bonanza Steak House without the knowledge of James Matthews or Matthews Company. You are instructed that under the law a real estate broker or real estate salesman who attempts to act for both lessor and lessee with respect to a proposed lease without the knowledge of both parties for whom he attempts to act, forfeits all rights to any commission; and, in this case if you find from the evidence that Robert Vogel was attempting to so act for both the proposed lessee and the

proposed lessor (defendant), then your verdict should be for defendant.

We find no error in refusing to give the instruction. Mr. Vogel started out to obtain a site for Bonanza; however, he never at anytime sought a commission from Bonanza until after Matthews refused to pay the commission and after the deal was consummated. When Matthews refused to pay a commission it was at that time that Mr. Vogel tried to salvage a commission by asking Bonanza if it would pay him a commission. Bonanza voluntarily agreed to pay one-half the commission in order to maintain good relations. Mr. Vogel was not at anytime trying to collect a double commission; in fact he sued on the basis that one-half of his commission had been paid and he was seeking the other one-half from Matthews.

Appellant's third point for reversal is that the court erred in refusing requested instruction No. 4, which reads as follows:

As a defense to the commission claimed by plaintiff, defendant contends that Matthews Company was first contacted about the proposed lease after Robert Vogel had been informed to the effect that the representative of Bonanza Steak House could deal direct with Matthews Company without any assistance from a real estate salesman; and, if you find from the evidence that Robert Vogel was told by a representative of Bonanza Steak House to the effect that no help was needed from a real estate salesman before he talked to James Matthews about the matter, then your verdict should be for defendant.

As we view the instruction it is binding; also it does not comport with this court's per curiam order handed down when AMI (1) was published.

Appellant's final point for reversal is that the court erred in permitting testimony about the value of appellee's services. Over the objections of appellant the court permitted testimony of the accepted standard for reasonable compensation in the Little Rock area for brokerage services rendered.

We find no merit in the point.

This court was faced with the same problem in *Hodges* v. *Bayley*, 102 Ark. 200, 143 S.W. 92 (1912). There we said: "We think there was some testimony proving that defendant listed his property for sale with the plaintiff and employed him to secure a purchaser for his stock of goods, and that plaintiff was the procuring cause of the sale thereof which defendant consummated with Thornton; and there was also evidence showing that the amount of the commission recovered was a reasonable and customary compensation for like service rendered in making such sales."

Appellant argues that Mr. Vogel's activities respecting the project were very scant, indicating he did not earn the commission claimed. It is true Mr. Vogel spent very little time with the venture, but the fact remains that he brought the parties together and the lease was consummated, whereupon he was entitled to his brokerage. *Walthour* v. *Finley*, 237 Ark. 106, 372 S.W. 2d 390 (1963).

The judgment is affirmed.

BYRD, J., not participating

FOGLEMAN, J., concurs

JOHN A. FOGLEMAN, Justice, concurring. I concur. The only valid reason, however, for refusal of the instruction on dual agency, is that, under the evidence, Vogel was not vested with authority to exercise any discretion on behalf of either the buyer or the seller. He was merely a middleman who brought the parties together. 3 Am. Jur. 2d 620, Agency § 255; 12 Am. Jur. 2d 912, 914, Brokers § 171, 173; 3 CJS 149, Agency § 339; Annot, 14 ALR 464, 472.